# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | | |
|---|---|---|
| **MICHAEL J. MORVAN** | * | **CIVIL ACTION NO. 07-1328** |
| **VERSUS** | * | |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. Pursuant to 28 U.S.C. § 636(c)(1) and with the consent of all parties, the district court referred the above-captioned matter to the undersigned magistrate judge for the administration of proceedings and entry of judgment. For the reasons assigned below, the decision of the Commissioner is **REVERSED** and the matter **REMANDED** for further proceedings.

## Background & Procedural History

On February 1, 2005, Michael J. Morvan filed the instant applications for disability insurance benefits. (Tr. 45-48). He alleged disability since August 8, 2004, due to a back injury. (Tr. 45, 52). The claim was denied at the initial stage of the administrative process. (Tr. 37, 38-41). Thereafter, Morvan requested and received an April 12, 2006, hearing before an Administrative Law Judge ("ALJ"). (Tr. 329-338). However, in a January 22, 2007, written decision, the ALJ determined that Morvan was not disabled under the Act, finding at Step Five of the sequential evaluation process that he was able to make an adjustment to other work that exists in substantial numbers in the national economy. (Tr. 10-21). Morvan appealed the

adverse decision to the Appeals Council. On June 15, 2007, the Appeals Council denied Morvan's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

On August 14, 2007, Morvan sought review before this court. He alleges the following errors:

(1) the ALJ erred by failing to find that his pelvic girdle disease and pain were not severe impairments; and

(2) the ALJ's residual functional capacity assessment is not supported by substantial evidence.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de*

*novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## **Determination of Disability**

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work. *See* 42 U.S.C. § 423(d)(2)(A). Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

3

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### a) Steps Two and Three

The ALJ found at Step Two of the sequential evaluation process that Morvan suffers from severe impairments of degenerative disc disease of the lumbar spine, obesity, hypertension, and diabetes mellitus. (Tr. 17-18, 20). He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. *Id*.

Plaintiff contends that the ALJ should have found that his pain and pelvic girdle disease were severe impairments. In assessing the severity of an impairment, the Fifth Circuit has determined that "an impairment can be considered as not severe only if it is a slight abnormality

4

[having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Loza v. Apfel*, 219 F.3d 378, 391 (5th Cir. 2000). However, the instant ALJ's alleged failure to find that plaintiff's pain and pelvic girdle disease were severe impairments is not critical when, as here, the ALJ has determined that the claimant suffers at least one severe impairment because the ALJ must then proceed to consider all medically determinable impairments in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523 & 416.923.[1] Thus, the pivotal issue is whether the ALJ's residual functional capacity assessment is supported by substantial evidence.

## b) Residual Functional Capacity

The ALJ determined that Morvan retains the residual functional capacity to perform light work, reduced by the ability to only occasionally perform postural activities and the need for a sit/stand option. (Tr. 19, 21).[2] Plaintiff contends that the ALJ erred in his assessment. The court agrees.

---

[1] "Pain, alone or in conjunction with other impairments, may be disabling, and the [Commissioner] is obliged to weigh subjective evidence of its existence." *Dellolio v. Heckler*, 705 F.2d 123, 127 (5th Cir. 1983) (citations omitted).

[2] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

The ALJ's residual functional capacity assessment is almost exclusively grounded upon a June 27, 2006, consultative examination administered by Robert Holladay, M.D., at the request of Disability Determination Services. (Tr. 209-211). In his report, Holladay remarked that Morvan mounted and dismounted the examination table without difficulty. *Id*. He ambulated without a cane, crutch, or walker. *Id*. He exhibited 5/5 motor strength in both upper extremities, and straight leg raising test was negative bilaterally. *Id*. Morvan demonstrated a normal gait, with 5/5 bilateral heel and toe gait. *Id*. Holladay diagnosed low back pain; postoperative laminectomy and discectomy lumbar spine; morbid obesity; and diabetes mellitus. *Id*. Morvan had no objective findings in the lower extremities to suggest an abnormal neurological condition. *Id*. However, his morbid obesity contributed to his problems. *Id*. Holladay opined that Morvan was physically capable of sitting, standing, or walking throughout an eight hour workday with the usual rest breaks. *Id*. He could frequently lift ten pounds and occasionally lift twenty pounds. *Id*. He could occasionally climb stairs. *Id*.[3]

The ALJ also recited a March 19, 2005, consultative examination conducted by Mohammad Burney, M.D., at the request of Disability Determination Services. (Tr. 147-149).[4]

---

[3] Holladay also completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 212-215). He indicated that Morvan could frequently lift ten pounds and occasionally lift twenty pounds. *Id*. He could occasionally perform postural activities, but needed to alternate sitting and standing. *Id*. No other limitations were indicated. *Id*.

[4] During the examination, Morvan reported significant lower back pain which had worsened since his July 14, 2004, motor vehicle accident. *Id*. He described his pain as 8/10. *Id*. Morvan admitted that he had no weakness or sensory abnormalities in his bilateral lower extremities. *Id*. He did not use a cane, crutch, or walker. *Id*. He exhibited normal gait and station. *Id*. He was able to toe and heel walk without difficulty. *Id*. His morbid obesity precluded him from comfortably mounting/dismounting the examination table. *Id*. Waddell signs and straight leg raising test were negative. *Id*. He had no decrease in sensation and no decrease in muscle tone. *Id*. Burney diagnosed lumbar spine pain with no clinical evidence of radiculopathy. *Id*. Range of motion in the lumbar spine was limited. *Id*.

However, Burney did not assess plaintiff's residual functional capacity.

In contrast to Dr. Holladay's findings, plaintiff's treating physicians opined that his impairments caused more restrictive limitations. For instance, on March 28, 2006, Kathleen Majors, M.D., completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 200-203). She indicated that Morvan was unable to work. *Id*. Although a physician's statement that a claimant is "disabled" or "unable to work" is afforded no special significance under the regulations,[5] Dr. Majors further assigned specific limitations. She noted that Morvan could never climb, balance, knee, crouch, crawl, or stoop. *Id*. He also had to limit his exposure to temperature extremes, vibration, humidity, and hazards. *Id*. Majors concluded that plaintiff's severe pain interfered with his ability to concentrate and interact with others. (Tr. 204).

On March 18, 2005, Pierce Nunley, M.D., an orthopedic surgeon, examined Morvan. (Tr. 145-146A). Morvan reported that he experienced more pain while walking and standing than sitting. *Id*. His pain averaged a seven on a ten point scale and stemmed completely from his back. *Id*. He was in moderate distress due to pain. *Id*. He ambulated slowly without assistance or noted difficulty. *Id*. He exhibited limited range of motion in the lumbar spine and had a significant component of pelvic girdle disease. *Id*. Straight leg and Laseque's tests were negative. *Id*. Motion testing was 5/5, and his sensory examination was intact. *Id*. Nunley diagnosed low back pain, probably discogenic; pelvic girdle disease; and spondylosis at L4-5 and L5-S1. *Id*. Nunley recommended conservative management; surgery was not an option until Morvan lost a significant amount of weight. *Id*.

On August 11, 2006, Nunley again examined Morvan. (Tr. 262-264). He noted that

---

[5] 20 C.F.R. § 404.1527(e)(1); *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003).

Morvan continued to experience lower back pain, and that sitting was worse than standing or walking. *Id*. Flexion increased his pain. *Id*. Most days, his pain was 7/10. *Id*. He ambulated without difficulty or assistance. *Id*. He moved all extremities upon command. *Id*. Examination of the lower back revealed no abnormality. *Id*. However, Morvan demonstrated significant limitation with lumbar flexion and reported pain as a moderate component of pelvic girdle disease and right SI joint tenderness. *Id*. Straight leg test was negative bilaterally. *Id*. His sensory examination was intact and symmetrical to pinprick and light touch. *Id*. Nunley diagnosed low back pain, discogenic in nature; history of prior lumbar decompression; and multilevel lumbar spondylosis. *Id*. He opined that with a lumbar stabilization program, Morvan could decrease his lower back pain, but he was not sure by how much. *Id*.

On September 6, 2006, Dr. Nunley completed an Affidavit of Patient Status. (Tr. 304-307). Some of the clinical findings noted by Dr. Nunley include:

- large disc tear at L4-L5
- contained disc herniation at L5-S1
- joint restriction/Hypomobility at L5-S1/sacroiliac joint
- numbness, tingling in right toes, foot
- restriction in range of motion in lumbar extension and flexion
- pain upon lumbar extension and flexion; severe low back pain
- pain within normal range of motion
- painful physical therapy
- back pain range from 5 to 10
- joint stiffness
- slow, antalgic walk

8

- pelvic girdle dysfunction

- spasms in lumbar spine.

*Id*.

Nunley diagnosed a large disc tear at L4-L5; contained disc herniation at L5-S1; discogenic pain; lumbar spondylosis at L4-L5 and L5-S1; lumbar nerve root injury/radiculopathy (due to intermittent tingling and numbness in right toes); and joint fixation/hypomobility at L5-S1/sacroiliac joint (demonstrated by lack of joint mobility upon palpatory examination). *Id*. Nunley stated that Morvan would likely experience significant pain and disability for the rest of his life. *Id*. His injuries caused pain while sitting, standing, stooping, bending, climbing, lifting, walking, and exercising. *Id*.

The Fifth Circuit has held that

> "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985). The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990).
>
> Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Scott*, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id.; see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

The ALJ essentially assigned three reasons for favoring Dr. Holladay's assessment of plaintiff's impairments: 1) he performed a thorough examination; 2) the treating physicians' examinations were administered shortly after the July 14, 2004, precipitating motor vehicle accident; and 3) plaintiff's objective findings did not support the degree of disability/pain alleged. (*See*, Tr. 16-18).

As discussed above, however, Dr. Nunley performed a recent, thorough examination with diagnoses which supported the degree of pain alleged. Moreover, Dr. Majors issued her assessment in 2006 after managing plaintiff's pain for more than one year. In short, the ALJ's stated rationale for rejecting the assessments of plaintiff's treating physician(s) is not supported by the record..

The court further emphasizes that all of plaintiff's treating physicians, physical therapists, and chiropractor found him to be credible, earnest, and not a malingerer. (*See e.g.*, 309, 312). For instance, one physical therapist stated that Morvan would not be able to stay in one position for more than ten minutes at a time. (Tr. 309). Another physical therapist observed that he had problems with flexion and extension while standing. (Tr. 310). Yet another physical therapist opined that Morvan could not hold a job requiring physical activity, or sit for even a short period of time. (Tr. 312).

Dr. Wiseman, a chiropractor, treated plaintiff for back pain, off and on, for several months in 2005 and 2006. (Tr. 222-225). During a March 16, 2006, examination, Wiseman noted that Morvan exhibited severely restricted joint motion, moderate spasm, and moderate to severe tenderness to palpation over the lumbosacral area. (Tr. 223). On August 24, 2006, Wiseman completed a Medical Source Statement of Ability to do Work-Related Activities (Physical). (Tr. 234-237). He indicated that Morvan could occasionally lift ten pounds and frequently lift less

than ten pounds. *Id*. He could stand and walk for less than two hours in an eight hour day. *Id*. He needed to alternate standing and sitting. *Id*. Pushing and pulling were limited in the lower extremities. *Id*. He could occasionally perform postural activities. *Id*. Reaching in all directions was limited; he could not bend over and reach. *Id*. He also could not tolerate exposure to temperature extremes, humidity, or hazards. *Id*.[6]

In his decision, the ALJ rejected, without discussion, the findings and assessments of plaintiff's treating physical therapists and chiropractor, foremost, he said, because they were not acceptable medical sources under the regulations. (Tr. 19).[7] While physical therapists and chiropractors are not "acceptable" medical sources, the Commissioner may still use evidence from these sources to assess the severity of an impairment and how it affects the claimant's ability to work. 20 C.F.R. § 404.1513(d) & 416.913(d). Moreover, the ALJ is required to consider evidence from "other sources" when evaluating an "acceptable medical source's" opinion. SSR 06-03p.

Although Social Security Rulings are not binding on the federal courts, they are "binding on all components of the Social Security Administration." *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001); 20 C.F.R. § 402.35 (b)(1). If an agency violates its own rules, with resulting prejudice, then the underlying proceedings are tainted, and any resulting actions cannot stand. *See, Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981) (citations omitted). Nonetheless,

---

[6] Wiseman also completed a Clinical Assessment of Pain wherein he noted that Morvan's pain was distracting and incapacitating at times. (Tr. 238). He observed that medication severely limited Morvan's effectiveness in the workplace due to distraction, inattention, and drowsiness. *Id*.

[7] The ALJ did not remain consistent in this regard because he stated that he considered the findings of the disability examiner who is not an acceptable source or even a medical professional. *See generally*, 20 C.F.R. 404.1527(f), 416.927(f); 404.1513(d)(3) and 416.912(d)(3).

11

"[p]rocedural perfection in administrative proceedings is not required." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988). Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988). Here, such doubt exists because appropriate consideration of the assessments from these "other sources," may well have compelled the ALJ to credit the limitations recognized by plaintiff's treating physician(s).

In the aftermath of the ALJ's decision, plaintiff submitted additional evidence to the Appeals Council. (Tr. 317-322). The post-ALJ submission comprises, in relevant part, a March 15, 2007, letter and medical source statement from plaintiff's treating physician, Leigh Henderson, M.D., which assigned limitations more restrictive than those set forth in the ALJ's residual functional capacity. *Id*. This evidence constitutes part of the instant record – provided that it was new, material and related to the period before the ALJ's decision. *See, Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).[8] There is no question that the evaluation was new. Moreover, it is relevant to the period before the ALJ's decision as it reflects Dr. Henderson's observations spanning a two and half year period. Finally, the new evidence is material because it adds to the chorus of healthcare professionals who have substantiated plaintiff's complaints and limitations.

The Appeals Council reviewed the new evidence, but succinctly concluded that it did not provide a basis for changing the ALJ's decision. (Tr. 4-5). As the record stands, the

---

[8] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia*, *Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs*., 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

Commissioner has not provided any rationale for discounting the limitations recognized in the latest assessment by Dr. Henderson. *See, Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir.2000) (an ALJ cannot reject a medical opinion without an explanation supported by good cause). This new evidence further undermines the ALJ's residual functional capacity assessment.

Because the foundation for the ALJ's Step Five determination was premised upon a residual functional capacity which is not supported by substantial evidence, the undersigned finds that the ALJ's ultimate conclusion that plaintiff is not disabled, is likewise not supported by substantial evidence. For the foregoing reasons,

The Commissioner's decision is **REVERSED**, and the matter **REMANDED** for further proceedings in accordance with this opinion.

THUS DONE AND SIGNED, in Monroe, Louisiana, on the 29th day of September, 2008.

_____
KAREN L. HAYES
U. S. MAGISTRATE JUDGE